FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

DarrasLaw

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE HILLIAN,<br><br>Plaintiff,<br><br>vs.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that the Komatsu America Corp. Group Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by Komatsu America Corp. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, MELANIE HILLIAN ("Plaintiff" and/or Ms. HILLIAN"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ("PRUDENTIAL"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey, authorized to transact and transacting the business of insurance in this state, and the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant PRUDENTIAL, which fully insured the policy and which is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about May 13, 1901, PRUDENTIAL has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident of the United States, an employee of Komatsu America Corp., its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number G-52044-IL that had been issued by Defendant PRUDENTIAL to Komatsu America Corp. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. The subject Policy promised to pay Plaintiff monthly Long Term Disability benefits for a specified period of time should she become disabled. Therefore, PRUDENTIAL both funds and decides whether claimants will receive benefits under the

Plan and as such suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plan, if Plaintiff became disabled, PRUDENTIAL promised to pay long term disability benefits to Plaintiff as follows:

Elimination Period: 180 Days; Gross Disability Benefit: 60% of your monthly earnings, but not more than the Maximum Monthly Benefit.

Maximum Disability Benefit: 7,500.00 per month.

Minimum Disability Benefit: $50.00 per month.

Maximum Benefit Period: Under Age 61 – To your normal retirement age, but not less than 60 months.

Definition of Disability/Disabled:

You are disabled when Prudential determines that: You are unable to perform the material and substantial duties of your regular occupation due to sickness or injury; and you are under the regular care of a doctor; and you have 20% or more loss in your monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury: You are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and you are under the regular care of a doctor.

10. Prior to her disability under the terms of the Plan, Plaintiff had been employed with Komatsu America Corp. and was working as a Quality Assurance Coordinator.

11. Plaintiff became disabled under the terms of the Plan on or about April 19, 2016 and timely submitted a claim to PRUDENTIAL for payment of disability benefits.

12. On or about October 4, 2017, PRUDENTIAL unreasonably and unlawfully denied her long term disability claim. The denial was upheld on or about December 29, 2017. And, on or about May 18, 2018, PRUDENTIAL once again unreasonably and unlawfully upheld its denial of the disability claim.

13. According to PRUDENTIAL's denial letters:

**October 4, 2017**: "Based on the capacity outlined from your September 21, 2017 Independent Medical Examination and agreed upon by Dr. Simpson, you have the functional ability to perform the material and substantial duties of your regular occupation."

**December 29, 2017**: "Our review concurs you do have limitations due to psoriasis, psoriatic arthritis, widespread muscle and joint pain, fibromyalgia, right knee osteoarthritis, and chronic fatigue. Within those medically supported restrictions and/or limitations, you have the functional capacity to perform the duties of your regular occupation."

**May 18, 2018**: "We have determined that the information in your file does not support impairment that would prevent you from performing material and substantial duties of your regular occupation."

14. In so doing, PRUDENTIAL unreasonably and unlawfully relied upon the opinions of physicians who were financially biased and failed to take into consideration the impact that Plaintiff's consistently reported symptoms of pain, fatigue and cognitive difficulties would have on Plaintiff's ability to perform the requirements of Plaintiff's own occupation.

15. Additionally, PRUDENTIAL knew, or should have known, that the documentation submitted to and/or obtained by PRUDENTIAL clearly substantiated Plaintiff's disability, including, but not limited to, the following:

16. On or about February 22, 2016, Dr. Elizabeth Simpson, Rheumatology, completed a Certification of Health Care Provider form and wrote ""Patient has joint pain and severe fatigue that could lend to interference with her current work demands intermittently." Dr. Simpson opined that due to her symptoms caused by fibromyalgia and chronic fatigue Plaintiff would be absent from work 5 times per month for two full days at a time.

17. On or about April 22, 2016, Dr. Elizabeth Simpson, Rheumatology,

completed an Attending Physician and Certification of Health Care Provider form indicating that Plaintiff's significant loss of function occurred on April 19, 2016. Dr. Simpson described that the nature of Plaintiff's medical impairment as "Impaired concentration due to fatigue and need for pain meds with standing, sitting, walking, and lifting impairment due to joint and muscle pain." Additionally, Dr. Simpson wrote "Physical exertion and stress exacerbate her symptoms despite medication use; poor prognosis."

18. On or about August 10, 2016, Dr. Simpson composed a letter to Prudential regarding Plaintiff. She wrote "Mrs. Hillian first came to see me in October 2014 with complaints of generalized arthralgia, myalgias, and fatigue. Autoimmune testing was performed and was negative. She was given a trial of various pain relievers with minimal improvement. She continued to see me every three months and her pain levels were not improving and her fatigue was also worsening. The severity of her symptoms began to interfere with her work and also began to interfere with her activities of daily living. In April 2016 due to the progressive nature of her pain and fatigue symptoms despite multiple medications it was decided that she should seek disability. I have continued to follow her since then and she is still unable to work due to her symptoms. She will not be able to tolerate any type of job at this time. I have diagnosed her with Fibromyalgia and her disease has not improved despite changing medications and changing doses of medications. In my medical opinion her Fibromyalgia has led to this disabling condition and I do not expect enough improvement for her to continue any type of employment."

19. On or about August 15, 2016, Dr. Oana Andreescu, Internal Medicine, wrote to Prudential regarding Plaintiff's disabling conditions. Her letter stated "Ms. Melanie Hillian has been my patient for the last 7 years. She suffers from severe fibromyalgia, chronic fatigue syndrome, debilitating migraines, postural weakness, and severe depression as a result of the above conditions. She has tried through all these years to work, despite her ailments. She has seen multiple specialists and had

extensive testing. However, the kind of conditions she has cannot be seen on imagistic or any other types of tests, but are strictly clinical diagnoses, based on history and bedside exam. As such, I do believe she is severely impaired by them, that she cannot function, despite her efforts, and that she should be considered disabled at this point in her life."

20. On or about February 24, 2017, Dr. Simpson responded to a questionnaire from Prudential asking for her opinion regarding Plaintiff's current functional capacity. Dr. Simpson wrote:

1. Please provide us your assessment of her exact restrictions and limitations:
"Due to the severity of her fibromyalgia (illegible) chronic fatigue she is unable to work."

2. Please provide us with your treatment plan for her fibromyalgia:
"She is on medications for pain relief which can affect her ability to concentrate at times. I have encouraged a proper diet."

3. Please provide us your opinion in regards to her prognosis:
"Any work stressors will exacerbate her fibromyalgia and fatigue."

4. Do you expect any improvement?
"No she is unable to work because of the severity of her fibromyalgia and fatigue."

21. On or about May 23, 2017, Plaintiff was examined by Dr. Simpson. Plaintiff reported fatigue, joint pain and swelling. The findings on exam included: thoracic spine-tenderness; lumbar spine-tenderness; knee-right tenderness, range of motion: mild pain w/motion, soft tissue discomfort noted in the anterior neck, posterior neck, left posterior shoulder, right posterior shoulder, right chest, left chest, upper back, low back, right lateral epicondyle, left lateral epicondyle, left posterior thigh, right posterior thigh, right knee, left knee. There were 18 out of 18 total tender points.

22. On or about August 29, 2017, Plaintiff was seen and examined by Dr. Simpson. The office visit notes document reported pain and swelling in feet, ankles,

heels, knees, right hip and elbows. Additionally, it is noted that Dr. Andreescu prescribed Plaquenil and that a biopsy report demonstrated pustular psoriasis. Exam revealed 7 tender joints, 2 swollen joints. Enbrel was prescribed by Dr. Simpson.

23. On or about September 21, 2017, Plaintiff was sent for an Independent Medical Evaluation by Prudential. Dr. Raziano, Pain Medicine performed the evaluation.

24. On or about October 10, 2017, Plaintiff returned to see Dr. Simpson. The section of the office visit note titled Dictated Plan Details reads "She will continue on Enbrel. She will take over the counter Aleve for joint pain as needed for now. She is disabled because of the arthritis, fatigue and fibromyalgia. She continues to have 18/18 tender points on exam. She now has a new diagnosis of psoriatic arthritis with biopsy proven psoriasis. She is tolerating the Enbrel. She was also placed on Plaquenil by her PCP. I have contacted Prudential to explain that as I have stated multiple times in the past that she is disabled due to the severity of her disease."

25. On or about December 7, 2017, Plaintiff was seen and examined by Dr. Andreescu. The assessment was "Chronic fatigue and malaise, chronic fibromyalgia syndrome, and psoriasis."

26. On or about January 9, 2018 Dr. Andreescu completed a capacity questionnaire for Prudential opining that Plaintiff was not able to work at full time or part time capacity due to psoriatic arthritis, chronic fatigue, and fibromyalgia with depression.

27. On or about February 8, 2018 Dr. Simpson responded to a capacity questionnaire for Prudential. Dr. Simpson wrote " She is unable to work due to the severity of her joint and muscle pain and fatigue. The medication used to treat her symptoms can also cause issues with concentration and endurance. Prognosis despite treatment is poor."

27. To date, even though Plaintiff remains disabled, PRUDENTIAL refused to pay Plaintiff disability benefits under the Policy beyond September 30, 2017. The unlawful nature of PRUDENTIAL's denial decision is evidenced by, but not limited to,

the following:

- PRUDENTIAL ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,

- PRUDENTIAL ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physician's opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, PRUDENTIAL's highly conflicted physician's' opinions do not serve as substantial evidence, as they are not supported by evidence in the claim file, nor are they consistent with the overall evidence in the claim file.

For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, contrary to the evidence, contrary to the terms of the Plan and contrary to law. Further, PRUDENTIAL's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

28. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

29. As a direct and proximate result of PRUDENTIAL's failure to provide

Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about October 1, 2017 to the present date.

30. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

31. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that she meets the Plan definition of disability and consequently she is entitled to all benefits from the Plan to which she might be entitled while receiving disability benefits. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about October 1, 2017, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to future disability payments/benefits so long as she remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: March 12, 2019

DarrasLaw

FRANK N. DARRAS
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorneys for Melanie Hillian

COMPLAINT